California Properties Company v. Commissioner.
California Properties Co. v. Commissioner
Docket No. 110151.
United States Tax Court
1943 Tax Ct. Memo LEXIS 433; 1 T.C.M. (CCH) 659; T.C.M. (RIA) 43096; February 25, 1943
*433 Marshall P. Madison, Esq., 225 Bush St., San Francisco, Calif., Gerald S. Levin, Esq., 225 Bush St., San Francisco, Calif., and Sigvald Nielson, Esq., 225 Bush St., San Francisco, Calif., for the petitioner. Frank T. Horner, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner made several adjustments to the net income (or loss) shown by petitioner's returns for the calendar years 1938 and 1939 and determined the following deficiencies: Income
Excess Profits
Year
Tax
Tax
1938
$ 179.58
None
1939
5,062.30
$2,098.07 Some of the adjustments are not contested. The petitioner alleges that respondent erred in determining the fair market value of certain property acquired by petitioner on December 20, 1937. It is claimed that petitioner has made an overpayment of income tax for the year 1939 in the amount of $1,793.70. The issues as originally framed by the pleadings involved three tracts of ground. One, referred to as Parcel 1, was sold by the petitioner in 1938 for $6,500. Respondent allocated to it a cost basis of $3,765.77 with a resultant profit of $2,734.23. He now concedes that no gain was realized from the *434 sale of this property. Since the other adjustments made to the net income reported for that year are not questioned and since the elimination of the item in issue leaves the petitioner with a net loss for that year, decision of no deficiency for the year 1938 will be entered. The sole issue to be determined is the fair market value on December 20, 1937 of 98.5 acres of unimproved real estate on the edge of the city of Oakland in the county of Alameda, State of California, adjacent to the city of San Leandro. The property is referred to in the pleadings and the evidence as Parcels 2 and 3. Findings of Fact Petitioner is a corporation duly organized under the laws of the State of California on December 20, 1937. Its income tax returns were filed with the collector of internal revenue for the first district of California. In the income and excess profits tax return for the year 1939 no income or excess profits tax indicated and none was paid, except as hereinafter set out. On March 20, 1941, petitioner paid to the collector of internal revenue for the first district of California the sum of $1,901.32. The check, payable to the collector, bears the notation "deficiency $1,793.70, *435 Interest $107.62." In connection with the organization of petitioner it acquired four parcels of real property known as the San Leandro property (including the two now in issue) and also some property known as the St. Mary's property and the San Mateo property, solely in exchange for 13,265 shares of its common capital stock. Immediately after such exchange the persons by whom the properties were transferred and to whom the shares of stock were issued were in control of petitioner and the amount of stock and securities received by each was substantially in proportion to his interest in the properties prior to the exchange. Parcel 2 of the San Leandro property comprises 68.8 acres. Parcel 3 contains 29.7 acres. The two tracts of ground are contiguous and form a rough triangle immediately across the road from the city of San Leandro, the base of the triangle being Foothill Boulevard, an arterial highway leading northward from the city of Oakland. Parcels 2 and 3 above referred to were sold by petitioner to E. W. Field Corporation on January 26, 1939, for the sum of $85,000. The fair market value of said property on December 20, 1937 was $75,000. Opinion The finding which has been *436 made disposes of the only issue submitted. Both parties recognize that the question is one of fact, that previously decided cases are not particularly helpful, that valuation of real estate is at best a mere "approximation derived from the evaluation of elements not easily measured," and that all credible evidence should be weighed and considered. (For a more detailed discussion of valuation see ; ; and .) As is frequently the case where witnesses are called by the parties to express opinions as "experts", a substantial portion of the brief and argument of each is devoted to extolling the wisdom, experience and capabilities of the witnesses called by him while pointing out the frailties, lack of experience and bias of those called by his opponent. This is not said in a spirit of criticism but merely suggests the difficulty triers of fact experience in attempting to determine actual fair market value on the basic date. The valuations range from $40,899.77 *437 (determined by respondent) to $98,075, the latter amount being that fixed by Edward B. Field, a stockholder in the purchaser, upon whose advice the property was purchased in January, 1939, for $85,000. Intermediate estimates are: $51,250, made by respondent's witness, which has caused him (respondent) to abandon his own determination of $40,899.77; $61,000, the assessed valuation for the four parcels, which, under the method of allocation apparently adopted by both parties, would mean that the two parcels in issue were assessed for approximately $40,000; and $89,000, the estimate made by petitioner's other witness. Then there are also the observations made by Field to the effect that there was "no conceivable difference," that he "couldn't see an iota of difference between the value of the property in January, 1939, and its value on the basic date. To this may be added the suggestion contained in the record that the taxing authorities were thought to have valued the property at approximately one-third of its actual value, thereby indicating a possible value of $120,000. A general description of the property aids but slightly in determining its value on the basic date. The two parcels *438 are roughly in the shape of a triangle, the base running in a general north and south direction along Foothill Boulevard, a well improved arterial highway leading to Oakland. The 69 acre tract lies along the boulevard, is largely flat land and well adapted to subdivision for residential purposes. The 30 acre tract rises in a slope and, while adaptable for residential purposes, would require larger expenditures for grading, curbing, guttering and installing sewers and utilities. Few additional subdivisions were then being laid out in the general area and not many vacant lots were being sold though many were for sale. Transportation to Oakland was only fair, the interval between buses being 40 minutes and the fare 14 cents each way. While a school was available it was not ideally situated so far as this particular property was concerned; for children would be required to walk a distance of a mile or so along an arterial highway or cross it into the city of San Leandro. This property, however, was the only large tract of land in the area available for subdivision. It lay just across the road from the city of San Leandro, making shopping facilities readily available. Some of these facts *439 were relied upon by the witnesses to support a high valuation and others to support a low. Each extreme seems unreasonable. One witness for petitioner admitted that he would not have purchased the tract at the price fixed by him and would not have recommended that a client of his do so. On the other hand it seems unreasonable to suppose that the property would have increased in value 66 percent in a little more than one year - from $51,250 to $85,000. The witness making this appraisal had but slight knowledge of the property on the basic date and expressed his opinion after projecting his thinking back five years, following an inspection of it just shortly before the hearing. Yet it is not unreasonable to conclude that some increase occurred during the 13 months it was held by the owner. Due consideration has been given to all of the evidence and the implications arising therefrom, as well as to the arguments and suggestions of counsel. Conclusion has been reached that the fair market value of the property on the basic date was $75,000 and we now so hold. Decision will be entered under Rule 50.